

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LG CAPITAL FUNDING, LLC<br><br>                      Plaintiff,<br>      v.<br><br>ONE WORLD HOLDINGS, INC.<br><br>                      Defendant. | Civil Action No.:<br><br>VERIFIED COMPLAINT |

Plaintiff, GEL LG Capital Funding, LLC ("Plaintiff" or "LG"), by and through its undersigned attorneys, Garson, Ségal Steinmetz, Fladgate LLP, brings its Verified Complaint against Defendant One World Holdings, Inc. ("Defendant" or "OWOO") and respectfully alleges as follows:

## THE PARTIES

1.  Plaintiff LG CAPITAL FUNDING, LLC is a limited liability company duly organized under the laws of the State of New York having a principal place of business located at 1218 Union Street, Suite #2, Brooklyn, New York 11225.

2.  Upon information and belief, Defendant ONE WORLD HOLDINGS, INC. is a corporation organized and existing under the laws of the State of Nevada, having a principal place of business located at 14515 Briarhills Parkway, Houston, Texas 77077. ONE WORLD HOLDINGS, INC. is traded publicly on the Pink Over The Counter Markets, or Pink Sheets, under the symbol "OWOO". Plaintiff is further informed and believes, and upon that basis alleges that Defendant's status with the Nevada Division of Corporations is currently in default.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4.     Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject of this action is situated and it is the exclusive district which the parties agreed that the claims hereafter set forth can be brought.

## FACTS COMMON TO ALL CLAIMS
### The Note

5.     On or about July 23, 2013, OWOO issued a $62,000.00 Convertible Promissory Note to LG (the "OWOO1NN Note"). A true and correct copy of the OWOO1NN Note is attached hereto as **Exhibit A**.

6.     On or about October 25, 2013, OWOO issued a $52,000.00 Convertible Promissory Note to LG (the "OWOO2NN Note"). A true and correct copy of the OWOO2NN Note is attached hereto as **Exhibit B**.

7.     On or about October 25, 2013, OWOO and LG amended and restated a $50,000.00 Convertible Promissory Note (the "OWOO2AD Note"), originally issued to Curtis H. and Janet R. Threat on April 2, 2013 and subsequently assigned to LG. A true and correct copy of the OWOO2AD Note is attached hereto as **Exhibit C**.

8.     All the aforementioned Convertible Promissory Notes are together hereafter referred to, collectively, as the "Notes".

9. Each Note stipulates that LG, from time to time, and at any time during the relevant period, would have the right to convert all or part of the Note into shares of OWOO common stock (the "Common Stock"). Thus, §1.1 of the Notes provides, in pertinent part:

> <u>Conversion Right</u>. The Holder shall have the right from time to time, and at any time during the period beginning on the date hereof and ending on the later of: (i) the Maturity Date and (ii) the date of payment of the Default Amount (as defined in Article II) pursuant to Section 1.6(a) or Article II, each in respect of the remaining outstanding principal amount of this Note to covert all or any part of the outstanding and unpaid principal amount of this Note into fully paid and non-assessable shares of Common Stock, as such Common Stock exists on the Issue Date, or any shares of capital stock or other securities of the Borrower into which such Common Stock shall hereafter be changed or reclassified at the conversion price (the "Conversion Price") determined as provided herein (a "Conversion")...

10. The mechanics of converting the Notes required LG to submit a Notice of Conversion. Accordingly, §1.4(a) of the Notes provides, in pertinent part:

> <u>Mechanics of Conversion</u>. Subject to Section 1.1, this Note may be converted by the Holder in whole or in part at any time from time to time after the Issue Date, by (A) submitting to the Borrower a Notice of Conversion (by facsimile or other reasonable means of communication dispatched on the Conversion Date prior to 6:00 p.m., New York, New York time) and (B) subject to Section 1.4(b), surrendering this Note at the principal office of the borrower.

11. As the Notes dictate, the price at which each respective Note was convertible (the "Conversion Price") was to be determined for each share of Common Stock set equal to the "Variable Conversion Price." The Variable Conversion Price was to be calculated at 50% of the average of the three lowest Trading Prices for the Common Stock during the ten Trading Day period, ending one Trading Day prior to

3

the date that the Notice of Conversion was sent by LG to OWOO via facsimile (the "Conversion Date"). Thus, §1.2(a) of the Notes provides:

> Calculation of Conversion Price. The conversion price (the "Conversion Price") shall equal the Variable Conversion Price (as defined herein)… The "Variable Conversion Price" shall mean the Applicable Percentage (as defined herein) multiplied by the Market Price (as defined herein). "Market Price" means the average of the three (3) lowest Trading Prices (as defined below) for the Common Stock during the ten (10) Trading Day period ending one Trading Day prior to the date the Conversion Notice is sent by the Holder [LG] to the Borrower [OWOO] via Facsimile (the "Conversion Date")…. "Trading Day" shall mean any day on which the Common Stock is traded for any period on the OTCBB, or on the principal securities exchange or other securities market on which the Common Stock is then being traded. "Applicable Percentage" shall mean Fifty Percent (50%).

12. Delivery of the certificates for the converted Common Stock was to be provided to LG within three business days after receipt of the Notice of Conversion. Thus, §1.4(d) of the Notes provides:

> Delivery of Common Stock Upon Conversion. Upon receipt by the Borrower [OWOO] from the Holder [LG] of a facsimile (or other reasonable means of communication) of a Notice of Conversion meeting the requirements for conversion as provided in this Section 1.4, the Borrower shall issue and deliver or cause to be issued and deliver to or upon the order of the Holder certificates for the Common Stock issuable upon such conversion within three (3) business days after such receipt…

13. To LG, the conversion feature of the Notes was essential. LG was unwilling to lend money to OWOO simply to earn an interest rate return on a note. OWOO was and is an exceedingly risky credit, and LG was making an uncertain investment.[1] LG was only willing to purchase the Notes if they could earn LG a

---

[1] OWOO acknowledges this risk itself. In it's Form 10-K filing with the SEC, OWOO notes that its, "business is subject to numerous risks and uncertainties….If

4

return commensurate with the risk. LG would not have purchased the Notes without the conversion clause. LG's ability to obtain stock at a discount to the market price pursuant to the conversion clause of the Notes provided LG with an opportunity to earn a return commensurate with the risk. Any failure by OWOO to honor Conversion Notices, therefore, would deprive LG of the essential benefit for which it negotiated, and for which it purchased, the Notes.

14. The importance of the right to conversion was memorialized in the agreements between parties. As such, §1.4(g) of the Notes provided that, "[t]he Borrower agrees that the right to convert is a valuable right to the Holder. The damages resulting from a failure, attempt to frustrate, interfere with such conversion right are difficult if not impossible to qualify. Accordingly, the parties acknowledge that the liquidation damages provision contained in this Section 1.4(g) are justified."

15. After acquiring the Notes, LG, on several different occasions, duly submitted Notices of Conversion to convert a portion of the Notes into Common Stock. OWOO honored those conversions and delivered the requested shares of Common Stock to OWOO. In connection with such conversions, OWOO accepted LG's opinion of counsel, as was contractually required and necessary in order for OWOO to issue the Common Stock without restrictive legend. The removal of this restrictive legend was necessary to ensure that any converted shares could be sold registration pursuant to Rule 144 of the Securities Act of 1933.

16. To date of filing, the principal remaining of the OWOO1NN Note is $62,000. One conversion was made and honored on the OWOO2AD Note, and the remaining principal balance on said note is $47,454.89. Finally, the remaining principal balance on the OWOO2AD Note is $52,000.

---

any of the…risks actually occur, our business and financial results could be negatively affected to a significant extent.

## OWOO Inexplicably Refuses To Respond LG's November 2014 Notice of Conversion

17.     On or about November 11, 2014, LG duly submitted a Notice of Conversion to OWOO for a portion of the OWOO1NN Note. Specifically LG elected to convert $6,800 of the principal amount and $1,233.31 interest of the OWOO1NN Note. The $8,033.31 was to be converted into 3,707,681 shares of OWOO Common Stock.[2] A true and correct copy of that Notice of Conversion is attached hereto as **Exhibit D**.

18.     Without excuse or justification, OWOO refused to deliver to LG the shares of Common Stock that OWOO was obligated to deliver pursuant to such a Notice of Conversion.

19.     On or about November 12, 2014, Gayle Terry, an employee of Colonial Stock Transfer and OWOO's transfer agent, informed LG, via email, that OWOO did not "have enough available shares to process [LG's] conversion." A true and correct copy of the November 12, 2014 email is attached hereto as **Exhibit E**.

20.     Despite this notice, OWOO has continuously and patently failed to take the necessary steps to remedy its default.

---

[2] The average of the lowest three Trading Prices for the Common Stock during the ten Trading Day period prior to the date the Conversion Notice was sent amounted to $0.004333333/share. Applying the discount rate of 50% from the equation for the Variable Conversion Price, the applicable Conversion Price calculated to $0.002166667.

## OWOO's Default & Financial Insolvency

21.    Pursuant to Article III of the Notes, which details the "Events of Default", §3.2 stipulates that an Event of Default shall occur if:

> Conversion and the Shares. The Borrower fails to issue shares of Common Stock to the Holder (or announces or threatens in writing that it will not honor its obligations to do so) upon exercise by the Holder of the Conversion rights of the Holder in accordance with the terms of this Note, fails to transfer or cause its transfer agent to transfer (issue) (electronically or in certificated form) any certificate for shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, the Borrower directs its transfer agent not to transfer or delays, impairs, and/or hinders its transfer agent in transferring (or issuing) (electronically or in certified form) any certificate for shares of Common Stock to be issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, or fails to remove (or directs its transfer agent not to remove or impairs, delays and/or hinders its transfer agent from removing) any restrictive legend (or to withdraw any stop transfer instructions in respect thereof) on any certificate fort any shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note (or makes any written announcement, statement or threat that it does not intend to honor the obligations described in this paragraph) and any such failure shall continue uncured (or any written announcement, statement or threat not to honor its obligations shall not be rescinded in writing) for three (3) business days after the Holder shall have delivered a Notice of Conversion. It is an obligation of the Borrower to remain current in its obligations to its transfer agent. It shall be an event of default of this Note, if a conversion of this Note is delayed, hindered, or frustrated due to a balance owed by the Borrower to its transfer agent.

22.    Article III of the Notes, outlining the "Events of Default" articulates that, if one or more of the Events of Default shall occur:

> UPON THE OCCURRENCE AND DURING THE CONTINUATION OF ANY EVENT OF DEFAULT SPECIFIC IN SECTION 3.2, THE NOTE SHALL BECOME IMMEDIATELY DUE AND PAYABLE AND THE BORROWER SHALL PAY TO THE HOLDER, IN FULL SATISFACTION OF ITS OBLIGATIONS HEREUNDER, AN AMOUNT EQUAL TO: (Y) THE DEFAULT SUM (AS DEFINED HEREIN); MULTIPLIED BY (Z) TWO (2). *(emphasis in original)*.

23. Article III of the Notes goes on to state that:

> If the Borrower fails to pay the Default Amount within five (5) business days of written notice that such amount is due and payable, then the Holder shall have the right at any time, so long as the Borrower remains in default (and so long and to the extent that there are sufficient authorized shares) to require the Borrower, upon written notice, to immediately issue, in lieu of the Default Amount, the number of shares of Common Stock of the Borrower equal to the Default Amount divided by the Conversion Price then in effect.

24. At no point has LG ever, whether formally or informally, in writing or orally, waived OWOO's defaults.

25. Due to OWOO's persistent and willful failure to remedy its breach, as of filing the instant action, default payments owed to LG by OWOO under the terms of the §1.4(g) of the Notes have risen to over $178,000 dollars, including the interest rate of eight percent (8%), as designated in the first paragraph of each of the Notes.

26. Under §1.3 of the Notes, OWOO covenanted that during the period the conversion right exists, OWOO would reserve from its authorized and unissued Common Stock a sufficient number of shares, free from preemptive rights, to provide for issuance of Common Stock upon the full conversion of the Notes issued pursuant to the Purchase Agreement. OWOO was required at all times to have authorized and reserved four times the number of shares that is actually issuable upon full conversion of the Notes (based on the Conversion Price of the Notes in effect from time to time) (the "Reserved Amount"). If, at any time, OWOO did not

8

maintain the Reserved Amount, it was to be considered an Event of Default under Section 3.2 of the Notes. According to public records, at the time LG sent its Notice of Conversion to OWOO, there were 75,288,229 outstanding. Were LG to attempt to convert the entirety of the OWOO1NN Note, it would be have been entitled to 29,184,600 on that Note alone. Multiplying this number by four (to determine the Reserve Amount), OWOO was required to have at least 116,738,400 shares reserved for conversion of the Note. This calculation places OWOO directly in breach of §1.3 of the Notes.

27. The Notes, at §1.4(g), dictate that:

> The damages resulting from a failure, attempt to frustrate, interference with such conversion right are difficult if not impossible to quantify. Accordingly the parties acknowledge that the liquidated damages provision contained in this Section 1.4(g) are justified.

28. Given that it at the time of execution, it was inconceivable to consider that OWOO would, under any circumstances, have failed to fulfill its obligations under the Notes for a period of ten days, let alone close to three months, these default payments were reasonable when drafted.

29. On or about December 23, 2014, OWOO sent LG an email stating that due to its difficult financial condition, OWOO would seek to resolve the matter with LG by paying out a *paltry* 14.3% of the outstanding principal balances due to LG in return for an agreement that such payment would fully satisfy OWOO's obligations and nullify the conditions and covenants of the Note. A true and correct copy of the December 23, 2014 email is attached hereto as **Exhibit F**.

30. The 14.3% figure proposed by OWOO not only failed to consider default payments owed to LG under the terms of the Note, but by seeking to ameliorate OWOO's positioning and obligations under the Note, illustrated OWOO's utter

9

disregard for the sanctity of the bargain duly struck between the corporation and its creditor/investor.

31.     Further, the December 23, 2014 email from OWOO served to trigger one of several Events of Default, namely §3.2 of the Notes, which states that default will occur if OWOO shall announce or threaten in writing that it will not honor its obligations.

32.     In purchasing the Note, LG purposefully negotiated for conversion rights as a means of protection from the very scenario which it now finds itself.

33.     In addition to OWOO's breach of §3.2 of the Notes, other "Events of Default" have also occurred; namely:

   a. OWOO is in breach of its obligation to pay principal or interest pursuant to §3.1, which dictates that an Event of Default shall occur if, "[t]he Borrower fails to pay the principal hereof or interest thereon when due on this Note, whether at maturity, upon a Trading Market Prepayment Event pursuant to §1.7, upon acceleration or otherwise." As of the date of filing, all three of LG's Notes has surpassed its respective Maturity Date and no payments of principal or interest to LG have been issued by OWOO.

   b. Breach of §3.3, which states in pertinent part, that an Event of Default shall occur if, "[a]ny representation or warranty of the Borrower made herein or in any agreement, statement or certificate given in writing pursuant hereto or in connection herewith (including without limitation, the Purchase Agreement), shall be false or misleading in any material respect when made and the breach of which has (or with

the passage of time will have) a material adverse effect on the rights of the Holder with respect to this Note or the Purchase Agreement."

c. Breach of §3.15, which mandates that an Event of Default shall occur if the, "Borrower effectuates a reverse split of its Common Stock without Twenty (20) days prior written notice to the Holder." On November 30, 2013, OWOO conducted a 1:750 reverse stock split reducing the number of authorized shares of Common Stock from 1,500,000,000 to 50,000,000. LG was never provided such written notice of this transaction. In fact, LG was first made aware of this split nearly one year later. See, **Exhibit E**.

34.  In breaching their duties to effectuate LG's Notice of Conversion under the OWOO1NN Note, OWOO has defaulted under all of the Notes held by LG. §3.16 of the Notes includes a provision for cross-default, which states in pertinent part that:

> <u>Cross-Defaults</u>. Notwithstanding anything to the contrary contained in this Note of the other related or companion documents, a breach or default by the Borrower of any covenant or other term or condition contained in any of the Other Agreements, after the passage of all applicable notice and cure grace periods, shall, at the option of the Holder, be considered a default under this Note and the Other Agreements, in which event the Holder shall be entitled (but in no event required) to apply all rights and remedies of the Holder under the terms of this Note and the Other Agreements by reason of a default under said other Agreement or hereunder. "Other Agreements means, collectively, all agreements and instruments between, among or by: (1) the Borrower, and or for the benefit of, (2) the Holder and any affiliate of the Holder, including without limitation, promissory notes; provided, however, the term "Other Agreements" shall not include the related or companion documents to this Note. Each of the loan transactions will be cross-defaulted with each other loan transaction and with all other existing and future debt of Borrower to the Holder.

35. Upon information and belief, in it's Quarterly Report submitted to the United States Securities and Exchange Commission, Form 10-Q (Commission File No. 001-13869) for the Quarterly Period Ended September 30, 2014 ("Form 10-Q"), OWOO intimates in Note 2 that:

> The Company has incurred operating losses since inception, only recently began sales of its dolls, and has limited financial resources and a working capital deficit of $5,382,955 at September 30, 2014. These factors raise substantial doubt about the Company's ability to continue as a going concern. The Company's condensed consolidated financial statements have been prepared on a going concern basis, which contemplates the realization of assets and the satisfaction of liabilities in the normal course of business. In addition, the Company had an accumulated deficit of $15,974,571 and a total stockholders' deficit of $5,338,802 at September 30, 2014.

A true and correct copy of OWOO's Form 10-Q is attached hereto as **Exhibit G**.

36. Pursuant to OWOO's Form 10-Q, the company did have the shares available to provide LG the conversion it sought. According to the SEC filing, as of November 12, 2014, there were 48,869,166 outstanding shares of OWOO's Common Stock.

37. Note 15 of Form 10-Q also suggests that, despite its unwillingness to comply with LG's duly submitted Notice of Conversion, OWOO increased its convertible debentures and incurred additional indebtedness totaling $68,000, consisting of convertible debentures totaling $50,000 and stockholder advances of $18,000.

38. Also according to Form 10-Q, OWOO is currently carrying $1,191,953 in Convertible debentures.

39. Despite OWOO's willful resistance to convert the Note of LG as required, the company *did* permit other persons and entities to acquire significant

quantities of Common Stock during the *exact* time period. A true and correct copy of OWOO's Form-4 filed with the SEC on November 4, 2014 is attached hereto as **Exhibit H**.

40.  According to OWOO's Form-4, filed with the SEC on November 4, 2014, beginning on October 23, 2014 and ending on October 29, 2014, OWOO allowed for one Donna Harvey's to acquire of 5,981,630 shares of OWOO Common Stock.[3]

41.  With regards to the commencement of an action or proceeding to enforce any provision of the Notes, §4.5 dictates, in pertinent part:

> Cost of Collection. If default is made in the payment of this Note, the Borrower shall pay the Holder hereof costs of collection, including reasonable attorneys' fees.

42.  The shares, if delivered by OWOO, were and are eligible to be sold publicly without legend or restriction pursuant to applicable SEC rules and regulations.

43.  In their negotiations, the parties agreed and acknowledged that a breach by OWOO "of its obligations [under the Notes] will cause irreparable harm to the Holder, by vitiating the intent and purpose of the transaction contemplated."

### FIRST CLAIM FOR RELIEF
(FAILURE TO DELIVER SHARES: PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)

---

[3] On October 23, 2014, Donna Harvey beneficially owned 9,854,167 shares of OWOO Common Stock. By October 29, 2014, Ms. Harvey's beneficial ownership of OWOO Common Stock had risen to 15,835,767 shares.

44. LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

45. Pursuant to the agreements between them, OWOO is obligated to deliver 3,707,681 shares of its Common Stock, along with any necessary resolutions and acceptance of the legal opinions furnished by LG enabling LG to sell the shares publicly without restriction.

46. Despite its obligation to do so, OWOO has failed and refused to deliver said shares of stock to LG.

47. As a result of such refusal by OWOO, LG has suffered damages.

48. LG has no adequate remedy at law.

49. In the absence of injunctive relief, LG will suffer irreparable harm.

50. LG requests, therefore, that the Court enter and order, preliminarily and permanently, requiring OWOO to deliver immediately to LG 3,707,681.54 shares of its Common Stock, along with the necessary corporate resolutions and acceptance of the legal opinions furnished by LG enabling LG to sell the shares publicly without restriction.

## SECOND CLAIM FOR RELIEF
(FAILURE TO DELIVER SHARES: DAMAGES)

51. LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 49 of this Complaint as if fully set forth herein.

52.     LG, therefore, is entitled to an award of damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
(ANTICIPATORY BREACH OF CONTRACT: PRELIMINARY & PERMANENT INJUNCTION)

53.     LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 51 of this Complaint as if fully set forth herein.

54.     OWOO's failure to deliver shares of stock and otherwise comply with its obligations upon LG's partial conversion of the Notes constitutes an anticipatory breach by OWOO of its obligation to convert the remainder of the Notes into shares of Common Stock.

55.     As a result of such anticipatory breach by OWOO, LG has been damaged.

56.     LG has no adequate remedy at law.

57.     LG therefore requests that the Court enter an order, preliminarily and permanently, directing OWOO to honor, in accordance with the agreements between the parties, all conversion requests hereafter duly submitted by LG to convert all or any portion of the Note into shares of OWOO Common Stock, and directing OWOO to deliver all necessary corporate resolutions and acceptance of the legal opinions furnished by LG enabling LG to sell the shares publicly without restriction.

### FOURTH CLAIM FOR RELIEF
(ANTICIPATORY BREACH OF CONTRACT: DAMAGES)

15

58. LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 56 of this Complaint as if fully set forth herein.

59. LG is therefore entitled to an award of damages in an amount to be determined at trial, but not less than one hundred and forty thousand dollars ($140,000).

### FIFTH CLAIM FOR RELIEF
(CONVERSION: PRELIMINARY & PERMANENT INJUNCTION)

60. LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 58 of this Complaint as if fully set forth herein.

61. LG has a right to possession of the shares which OWOO has refused to deliver which right is greater than OWOO's right to possess those shares.

62. OWOO has wrongfully interfered with LG's right to possess those shares which interference constituted conversion of those shares by OWOO.

63. As a result of OWOO's wrongful conversion of the shares, LG has been damaged.

64. LG has no adequate remedy at law.

65. LG requests, therefore, that the Court enter an order, preliminarily and permanently, requiring OWOO to deliver immediately to LG 3,707,681 shares of its Common Stock, along with the necessary corporate resolutions and acceptance of the legal opinions furnished by LG enabling LG to sell the shares publicly without restriction.

## Sixth Claim For Relief
(Conversion: Damages)

66.   LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 64 of this Complaint as if fully set forth herein.

67.   LG, therefore, is entitled to an award of damages in an amount to be determined at trial, but not less than one hundred and forty thousand dollars ($140,000).

## Seventh Claim For Relief
(Costs, Expenses & Attorneys' Fees)

68.   LG realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 65 of this Complaint as if fully set forth herein.

69.   In accordance with §4.5 of the agreements between the parties, OWOO agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by LG in collecting any amount under the Note.

70.   Therefore, LG is entitled to an award against OWOO for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

## Prayer For Relief

**WHEREFORE**, Plaintiff LG CAPITAL FUNDING, LLC seeks judgment against Defendant ONE WORLD HOLDINGS, INC. as follows:

i. On the First and Fifth Claims for Relief, LG requests an order, preliminarily and permanently, requiring OWOO to deliver 3,707,681 shares of its Common Stock, along with the necessary corporate resolutions and acceptance of the legal opinions furnished by LG to enable LG to sell such Common Stock publicly without restriction; and

ii. On the Second, Fourth, and Sixth Claims for Relief, for damages in an amount to be determined at trial, but not less than one hundred and forty thousand dollars ($140,000); and

iii. On the Third Claim for Relief for an order, preliminarily and permanently, directing OWOO to honor, in accordance with the agreements between the parties, all conversion requests hereafter duly submitted by LG to convert all or any portion of the Notes into shares of OWOO Common Stock, and directing OWOO to deliver all necessary corporate resolutions and accept of the legal opinions furnished by LG necessary to enable LG to sell such shares publicly without restriction; and

iv. On the Seventh Claim for Relief for an award of LG's costs and expenses in prosecuting this action, including reasonable legal fees; and

v. On all Claims for Relief, for interest, attorneys' fees and the costs and disbursements of this action; and

vi. For such other further relief as the Court may deem just, proper, and in the interest of justice.

DATED: NEW YORK, NEW YORK
FEBRUARY 10, 2015

RESPECTFULLY SUBMITTED,
GARSON, SEGAL,
STEINMETZ, FLADGATE LLP
*ATTORNEYS FOR PLAINTIFF*

BY: _____
MICHAEL STEINMETZ
164 WEST 25TH STREET
SUITE 11R
NEW YORK, NY 10001
TELEPHONE: (212) 380-3623
FACSIMILE: (347) 537-4540
EMAIL: MS@GS2LAW.COM